Jason L. Lichtman
jlichtman@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Eric B. Fastiff
efastiff@lchb.com
Brendan P. Glackin
bglackin@lchb.com
Katherine C. Lubin
klubin@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiff*
*City of Fresno, California*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF FRESNO, CALIFORNIA, on behalf of itself and all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| GENERAL CHEMICAL CORPORATION, GENERAL CHEMICAL PERFORMANCE PRODUCTS, LLC, GENTEK INC., CHEMTRADE LOGISTICS INC., and FRANK A. REICHL, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff City of Fresno, California, individually and on behalf of a class of all those similarly situated (the "Class"), complains against Defendants, and alleges on information and belief as follows:

## SUMMARY OF THE ACTION

1.      Frank A. Reichl, a former General Manager of Water Chemicals for Defendant General Chemical Corporation, pleaded guilty to charges that he was involved in a conspiracy to fix prices, to rig bids, and to allocate customers of liquid aluminum sulfate.  Aluminum sulfate ($Al_2(SO_4)_3$), or alum, is an industrial chemical that is primarily used in water and wastewater treatment and in pulp and paper production.  This is a class action brought on behalf of Mr. Reichl's and his co-conspirators' victims.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1-2, 15(a), and 28 U.S.C. §§ 1331 & 1337(a).

3.      This Court has supplemental subject matter jurisdiction under 28 U.S.C. § 1367.

4.      Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a), 22 and 28 U.S.C. § 1391(b), (c), and (d), because during the Class Period, Defendants resided, transacted business, were found, or had agents in this District, and a substantial portion of the alleged activity affected interstate trade and commerce in this District.

5.      Defendants' conduct was within the flow of, was intended to, and did, in fact, have a substantial effect on, the interstate commerce of the United States, including in this District. During the Class Period, each Defendant, or one or more of its affiliates, used the instrumentalities of interstate commerce, including interstate railroads, highways, waterways, wires, wireless spectrum, and the U.S. mail, to join or effectuate their conspiracy.

**PLAINTIFF**

6.    Plaintiff City of Fresno, California ("Fresno" or "Plaintiff") is located in Fresno County, California.  Fresno purchased aluminum sulfate during the Class Period directly from one or more of the Defendants. Plaintiff was damaged by paying supra-competitive prices as the result of Defendants' illegal conduct.

**DEFENDANTS**

7.    Defendant General Chemical Corporation ("GCC") was a corporation existing under the laws of Delaware, with its principal place of business at 90 East Halsey Road, Parsippany, New Jersey.  General Chemical sold alum in large quantities to Plaintiff and to other class members.

8.    Defendant General Chemical Performance Products, LLC was a limited liability company existing under the laws of Delaware, with its principal place of business at 90 East Halsey Road, Parsippany, New Jersey.  Defendants General Chemical Corporation and General Chemical Performance Products, LLC are referred to collectively herein as "General Chemical."

9.    Defendant GenTek Inc. ("GenTek") is a corporation existing under the laws of Delaware, with its principal place of business at 90 East Halsey Road, Parsippany, New Jersey. General Chemical was a wholly owned and controlled subsidiary of GenTek from approximately 1999 to approximately October 2009.

10.    Defendant Chemtrade Logistics Inc. ("Chemtrade"), a publicly traded company, is incorporated under the laws of the Province of Ontario, Canada.  Chemtrade has its principal places of business at 90 East Halsey Road, Parsippany, New Jersey and Ontario, Canada. General Chemical was absorbed into Chemtrade through an acquisition in January 2014, with the latter assuming all rights and obligations of General Chemical.  As the legal successor in interest

- 2 -

to General Chemical, Chemtrade assumes the liability of damages caused by General Chemical's participation in the conspiracy.

11.    Defendant Frank A. Reichl ("Reichl") resides in Flanders, New Jersey.  Prior to July of 2005, he was the General Manager of Water Chemicals for General Chemical Corporation.  From approximately December of 2006 until he left GCC in 2010, Mr. Reichl was Vice President of Sales and Marketing.  On October 27, 2015, Mr. Reichl pleaded guilty to a violation of Section 1 of the Sherman Act, as described below.

## AGENTS

12.    The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

## INTERSTATE TRADE AND COMMERCE

13.    Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment, payments, and other documents essential to the sale of alum in interstate commerce between and among offices of Defendants and their customers located throughout the United States.

14.    Throughout the Class Period, GenTek, and GCC transported substantial amounts of alum in a continuous and uninterrupted flow of interstate commerce throughout the United States.

15.    Throughout the Class Period, GenTek's, and GCC's unlawful activities, as described herein, took place within and substantially affected the flow of interstate commerce and had a direct, substantial and reasonably foreseeable effect upon commerce in the United States.

1287346.4

## FACTUAL AND MARKET ALLEGATIONS

I.    **Industry Background**

    A.    **Overview**

16.    Aluminum sulfate (Al2(SO4)3), often referred to as alum, is an industrial chemical that is primarily used in water and wastewater treatment and in pulp and paper production.  The compound is also used in firefighting foam and fireproofing agents, fabric dyes, gardening, baking soda, and antiperspirants.  The production of aluminum sulfate involves combining bauxite or aluminum hydroxide with sulfuric acid.

17.    The U.S. market for water treatment chemicals can be divided into six categories: coagulants and flocculants; anti-foamants and defoamers; corrosion and scale inhibitors; activated carbon; pH adjustors; water softeners and other inorganic commodities; and biocides. Aluminum sulfate falls into the coagulants and flocculants category.  Within the United States market for water treatment chemicals, aluminum sulfate serves about 60% of the market for drinking water and flocculants.  Its main competitors in this market are ferric salts, which are slightly cheaper and have gained market share in the South, and polyaluminum chloride (PAC).

18.    Municipalities are the customer base for approximately 70% of the water treatment market in the United States, with the remaining 30% of the market supplying industry. Municipal demand for water treatment chemicals has grown by approximately 1–2% per year, on average.

    B.    **Market Size**

19.    In 1997, 67 manufacturing plants in the United States produced approximately 1.05 million metric tons of commercial and municipal aluminum sulfate, with a total shipments value of $111 million.  Relative to the total U.S. production, the exports and imports of aluminum sulfate were fairly small, at 7,370 tons and 31,100, respectively.  These numbers

remained about the same in 1998, and in 1999, it was estimated that the United States market for aluminum sulfate was also approximately 1.1 million dry tons per year.

20.     In 2009, the total U.S. production of aluminum sulfate for commercial use, excluding quantities produced for municipal use and consumption, was approximately 915,000 metric tons, with a total shipments value of approximately $242 million.

21.     The overall water treatment chemicals industry in the United States was valued at approximately $5.7 billion in 2013.

**C.     Market Structure**

22.     Because transportation costs are a significant factor in aluminum sulfate pricing, firms with production plants close to customers are at a considerable advantage for winning contracts.  Building production plants is very costly, and there is also a very large upfront fixed cost to entering a new geographic market.  This startup cost constitutes a significant barrier to entry and enables already established firms to submit much lower bids for municipal supply contracts.

**D.     Market Shares and Concentration**

23.     According to a February 22, 1999 article published by the Chemical Market Reporter, General Chemical was the largest U.S. manufacturer of aluminum sulfate in 1999, controlling 45% of the market, followed by GEO Specialty Chemicals, which accounted for approximately 20% of the market.  General Chemical was still the largest North American producer of aluminum sulfate in 2008 according to an SEC filing by its parent company at the time (GenTek Inc., Form 10K (2008)), and it remained one of the largest producers of aluminum sulfate in 2011.

1287346.4

E.     **Price Analysis**

24.     The following graph shows the producer price index for aluminum compounds (the narrowest category in which aluminum sulfate falls for which there is PPI data) from the years 1995 to mid-2015, indexed to June 1995.



25.     Raw materials purchased for the manufacture of aluminum sulfate include sulfur (to produce sulfuric acid when the manufacturer has that capability), sulfuric acid (when the manufacturer does not have that capability or it is uneconomical to produce), and bauxite and aluminum tri-hydrate.

26.     Since the production of aluminum sulfate involves combining bauxite or aluminum hydroxide with sulfuric acid, the price of aluminum sulfate should depend on the prices of those compounds.  According to one source, the supply of sulfuric acid has been volatile, in part due to the length of the typical contracts (two years) in that market.  Transportation is also a major cost in the production and supply of aluminum sulfate.

27.     Because customers in the water treatment chemicals market face seasonally high and low water conditions, demand for water treatment chemicals is higher in the spring and summer.  Municipal demand for water treatment chemicals depends on the levels of industrial

production, environmental regulations, availability of consumable water, and population.

Industrial demand for water treatment chemicals depends primarily on the level of production

and environmental regulations.  Competition in the market for water treatment chemicals should

be based on price, transportation costs, product quality, and technical support.

28.    As was confirmed by the Water Research Foundation in a 2009 report, "[a]lum is

a commodity chemical." The American Water Works Association has promulgated a standard

for "Aluminum Sulfate--Liquid, Ground or Lump," AWWA 8403-09.

### THE DOJ INVESTIGATION INTO THE UNITED STATES ALUM MARKET

29.    During most of the Class Period, Mr. Reichl held positions at GCC for which he

was responsible for the sale and marketing of water treatment chemicals, including aluminum

sulfate.  Mr. Reichl belonged to water chemical trade associations, including the Georgia

Association of Water Professionals, where he had an opportunity to meet with his co-

conspirators.

30.    Prior to July 2005, Mr. Reichl was General Manager of Water Chemicals for

GCC.  From approximately December 2006 until his employment with GCC terminated in 2010,

Mr. Reichl was Vice-President of Sales and Marketing.  Both positions required Mr. Reichl to

oversee the sale and marketing of water treatment chemicals, including liquid aluminum sulfate.

Mr. Reichl was also responsible for pricing and strategy, including analyzing proposals and

approving bids.

31.    Mr. Reichl pleaded guilty to "violating 15 U.S.C. § 1 in connection with a

combination and conspiracy to suppress and eliminate competition in the sale and marketing of

liquid aluminum sulfate" by a conspiracy to eliminate competition in the sale and marketing of

liquid alum by "agreeing to rig bids and allocate customers for, and to fix, stabilize, and maintain

the price of, liquid aluminum sulfate sold to municipalities and pulp and paper companies in the

United States from at least as early as 1997 and continuing until approximately July 2010."

*United States v. Reichl*, Case No. 15-cv-554 (D.N.J.), Dkt. No. 5 at ¶1 (Plea Agreement).

32. In furtherance of this conspiracy, Mr. Reichl was accused of (and pleaded guilty to) the following acts:

a. participating in meetings and conversations in New Jersey and elsewhere to discuss GCC's and its competitors' liquid aluminum sulfate business;

b. agreeing with competitors to "stay away" from each other's "historical" customers by not pursuing the business of those customers;

c. tracking bid and pricing histories to determine which accounts were the "historical" customers of each coconspirator or other supplier of liquid aluminum sulfate, so as to determine whether to pursue a particular contract or to submit an intentionally losing or "throw away" bid or price quotation;

d. submitting intentionally losing or "throw away" bids or price quotations to each other's "historic" liquid aluminum sulfate customers;

e. from time to time, discussing the price to be quoted to a customer by the intended winner to determine the amount of the intended loser's intentionally losing or "throw away" bid or price quotation;

f. from time to time, upon request of a co-conspirator, withdrawing inadvertently winning bids submitted to co-conspirators' "historical" customers;

g. where a co-conspirator could not withdraw its inadvertently winning bid, bidding to lose on one of its own customers to compensate for the loss of that "historical" customer; and

h.      instructing new employees as to how to determine whether and how to bid on or quote a price for the business of liquid aluminum sulfate customers so as to comport with the agreement not to compete between the defendant and co-conspirators. *Reichl*, Dkt. No. 1 at ¶13 (Information).

33.     The DOJ stated "[t]here are potentially hundreds of municipalities and pulp and paper companies that were affected over the thirteen-year course of the conspiracy . . . ." Dkt. No. 8 in Reichl at 2 (Government's Unopposed Motion to Authorize Alternate Victim Notification Procedures Pursuant To 18 U.S.C. § 3771(d)(2)).

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action on behalf of itself and all other similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities that directly purchased aluminum sulfate within the United States from any Defendant or any predecessor, subsidiary, or affiliate at any time between January 1, 1997 and July 31, 2010. Excluded from the class are Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, and employees.

35.     Plaintiff does not know the exact number of members of the Class because such information is in the exclusive control of Defendants.  Plaintiff believes that Class members number at least in the hundreds and are sufficiently numerous and geographically dispersed so that joinder of all Class members is impracticable.

36.     There are questions of law and fact which are common to the claims of Plaintiff and the Class, including, but not limited to:

a.      Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for alum;

1287346.4

b.      Whether Defendants rigged bids and allocated customers and markets for alum;

c.      Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, and/or maintain the prices for alum;

d.      The existence and duration of the agreements alleged herein to fix, raise, maintain, and/or stabilize the prices for alum;

e.      Whether Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

f.      Whether Defendants' agents, officers, employees, or representatives participated in correspondence and meetings in furtherance of the illegal conspiracy alleged herein, and, if so, whether such agents, officers, employees, or representatives were acting within the scope of their authority and in furtherance of Defendants' business interests;

g.      Whether, and to what extent, the conduct of Defendants caused injury to Plaintiff and members of the Class, and, if so, the appropriate measure of damages; and

h.      Whether Plaintiff and members of the Class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 and 3 of the Sherman Act.

37.      Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and the members of the Class have all sustained damage in that, during the Class Period, they purchased alum directly from one or more Defendants at artificially maintained, supra-competitive prices, established by Defendants' actions in connection with the anticompetitive behavior alleged herein. Defendants' anticompetitive conduct, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiff and the other Class members.

- 10 -

38.     Plaintiff will fairly and adequately assert and protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

39.     Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

40.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

        a.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

        b.     The Class is readily definable and one for which records should exist in the files of Defendants.

        c.     Prosecution as a class action will eliminate the possibility of repetitious litigation.

        d.     Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

        e.     Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

42.     This class action presents no difficulties of management that would preclude its maintenance as a class action.

## TOLLING OF THE STATUTE OF LIMITATIONS

43.     Plaintiff had neither actual nor constructive knowledge of the facts constituting its claim for relief.

44.     Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until at or about October 2015, when Mr. Reichl was prosecuted.

45.     Defendants engaged in a secret conspiracy that did not reveal facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy to fix prices for alum.

46.     In announcing price increases for alum, Defendants often asserted that the cause of such increases was attributable entirely to higher raw material and energy costs, without disclosing their conspiracy to fix and maintain alum prices.

47.     Accordingly, Plaintiff could not have had either actual or constructive knowledge of the price fixing scheme until the public disclosure of the DOJ's criminal investigation.

48.     Because Defendants' agreement, understanding and conspiracy was kept secret, Plaintiff and members of the Class were unaware of Defendants' unlawful conduct alleged herein and did not know that they were paying artificially high prices for alum during the Class Period.

## COUNT I

## Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

49.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

- 12 -

50.     Defendants and their co-conspirators engaged in a continuing contract, combination, and conspiracy to artificially fix, raise, maintain, and/or stabilize the prices of alum within the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

51.     Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by fixing, raising, maintaining, and/or stabilizing at artificial and supracompetitive levels, the prices of alum.

52.     In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to (a) artificially fix, raise, maintain and/or stabilize the price of alum; (b) rig bids for alum; and (c) allocate customers and territories with respect to the marketing of alum.

53.     The illegal combination and conspiracy alleged herein had the following effects, among others:

        a.      The prices charged by Defendants to, and paid by, Plaintiff and members of the Class for alum were fixed, raised, maintained and/or stabilized at artificially high and supracompetitive levels;

        b.      Plaintiff and members of the Class have been deprived of free and open competition in the purchase of alum;

        c.      Plaintiff and members of the Class have been required to pay more for alum than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy;

        d.      Competition in the sale of alum has been restrained, suppressed or eliminated.

- 13 -

54.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class have been injured and damaged in their business and property in an amount to be determined according to proof.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A.     That the Court determine that this action may be maintained as a class action under Rules of Civil Procedure 23(a), (b)(2) and (b)(3), and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to members of the Class;

B.     That the Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.     That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiff and the Class;

D.     That the Court award Plaintiff and the Class treble damages;

E.     That the Court award Plaintiff and the Class attorneys' fees and costs as well as prejudgment and post judgment interest as permitted by law

F.     That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

G.     That the Court award Plaintiff and the Class such other and further relief as may

- 14 -

1287346.4

be deemed necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a jury trial on all matters so triable.

Dated:  January 29, 2016

_/s/ Jason L. Lichtman_

Jason L. Lichtman
jlichtman@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

Eric B. Fastiff
efastiff@lchb.com
Brendan P. Glackin
bglackin@lchb.com
Katherine C. Lubin
klubin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

_Attorneys for Plaintiff_
_City of Fresno, California_

1287346.4

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I certify that to the best of my knowledge, the matter in controversy is the subject of other

actions pending in this court:

- *United States of America v. Frank A. Reichl*
  Criminal No. 2:15-cr-0554 D. N.J. (JLL);

- *Central Arkansas Water v. Chemtrade Logistics, Inc., et al.*
  Case No. 2:15-cv-7827 (SRC-CLW);

- *Detroit Water and Sewerage Department v. General Chemical Corporation, et al.*
  Case No. 2:15-cv-7896 D. N.J. (JJL-JAD);

- *Chester Water Authority v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-7928 D. N.J. (JLL-JAD);

- *City and County of Denver v. General Chemical Performance Products, LLC, et al.*
  Case No. 2:15-cv-7996 D. N.J. (SRC-CLW);

- *City of Winter Park v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8031 D. N.J. (SRC-CLW);

- *Hazelton City Authority v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8056 D. N.J. (SRC-CLW);

- *The City of Cincinnati v. General Chemical Corporation, et al.*
  Case No. 2:15-cv-8065 D. N.J. (SRC-CLW);

- *American Eagle Paper Mills, Inc. v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8142 D. N.J. (SRC-CLW);

- *Oakland County, Michigan v. Chemtrade Chemicals Corporation, et al.*
  Case No, 2:15-cv-8198 D. N.J. (SRC-CLW);

- *Amrex Chemical Company, Inc. v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8227 D. N.J. (SRC-CLW);

- *City of Greensboro v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8230 D. N.J. (SRC-CLW);

- *City of Newark v. Chemtrade Chemicals Corporation, et al.*
  *Case No. 2:15-cv-8261 D. N.J. (SRC-CLW);*

- *Brick Township Municipal Utilities Authority v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8273 D. N.J. (SRC-CLW);

1287346.4

- *City of Texarkana, Arkansas v. Chemtrade Chemicals Corporation, et al.*
  Case No. 2:15-cv-8294 D. N.J.(SRC-CLW);

- *Clarksville Light & Water Co. v. General Chemical Corporation, et al.*
  Case No. 2:15-cv-8295 (SRC-CLW);

- *City of Columbia, South Carolina v. Frank A. Reichl, et al.*
  Case No. 2:15-cv-8429 (SRC-CLW);

- *Suez Water Management & Services Inc. et al.v. Reichl, et al.*
  Case No. 2:15-cv-8697 (SRC-CLW);

- *Town of Tonawanda, New York v. Reichl et al.*
  Case No. 2:15-cv-8739 (SRC-CLW);

- *The City of Charlotte v. Reichl, et al.*
  Case No. 2:15-cv-8755 (SRC-CLW);

- *Beaver Water District v. Reichl, et al.*
  Case No. 2:15-cv-8887 (SRC-CLW);

- *City of Siloam Springs, Arkansas v. Reichl et al.*
  Case No. 2:15-cv-8888 (SRC-CLW);

- *City of Springdale, Arkansas v. Reichl et al.*
  Case No. 2:15-cv-8889 (SRC-CLW);

- *Interstate Chemical, Inc. v. Reichl, et al.*
  Case No. 2:16-cv-0009 (SRC-CLW);

- *Ottawa County, Ohio v. Reichl, et al.*
  Case No. 2:16-cv-0303 (SRC-CLW);

- *City of Lorain v. Reichl, et al.*
  Case No. 2:16-cv00453 (SRC-CLW); and

- *Hope Water and Light Commission v. Reichl, et al.*
  Case No. 2:16-cv-0493 (SRC-CLW).

1287346.4

I certify under penalty of perjury that the foregoing is true and correct.

Dated:  January 29, 2016                      */s/ Jason L. Lichtman*

                                             Jason L. Lichtman
                                             jlichtman@lchb.com
                                             LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                             250 Hudson Street, 8th Floor
                                             New York, NY  10013-1413
                                             Telephone:  212.355.9500
                                             Facsimile:  212.355.9592

                                             Eric B. Fastiff
                                             efastiff@lchb.com
                                             Brendan P. Glackin
                                             bglackin@lchb.com
                                             Katherine C. Lubin
                                             klubin@lchb.com
                                             LIEFF CABRASER HEIMANN &
                                             BERNSTEIN, LLP
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA  94111-3339
                                             Telephone:  415.956.1000
                                             Facsimile:  415.956.1008

                                             *Attorneys for Plaintiff*
                                             *City of Fresno, California*

1287346.4